## ANTELOPE Co. *v.* CHICAGO, B. & Q. R. Co.

*(Circuit Court, D. Nebraska.* May, 1883.)

1. JURISDICTION—CONSOLIDATION OF RAILROAD COMPANIES—CITIZENSHIP.

The Chicago, Burlington & Quincy Railroad Company, created under the laws of Illinois, was consolidated with the Burlington & Missouri River Railroad Company of Iowa, and subsequently entered into articles of consolidation with the Burlington & Missouri River Railroad Company in Nebraska, the latter being a Nebraska corporation, by a sale and transfer to it of the Nebraska road. *Held,* that the Chicago, Burlington & Quincy Railroad Company did not, under the Nebraska laws, become a domestic corporation, but remained an Illinois corporation for the purposes of the jurisdiction of the federal court.

2. SAME—FOREIGN CORPORATION—JURISDICTION.

Where the state does not assume by its legislation to create a corporation, or to require a foreign corporation to become domestic, but recognizes the existence of such foreign corporation and its right to come into the state and transact business therein, such foreign corporation remains a corporation of the state under whose laws it was created, and, for the purposes of the jurisdiction of the federal courts, a citizen of that state.

Plea to Jurisdiction of Court.

*Mr. Munger,* for plaintiff.

*Mr. Marquett,* for defendant.

McCRARY, J. This case is before the court on a plea in abatement, raising the question whether the defendant is a corporation of Nebraska. The essential facts are as follows:

(1) The Chicago, Burlington & Quincy Railroad Company was originally created a corporation of the state of Illinois under the laws of that state.

(2) Afterwards said corporation was consolidated with the Burlington & Missouri River Railroad Company of Iowa, and thereby became the owner of a line of railway extending across that state from the Mississippi to the Missouri river, which has for a number of years been operated as a part of the Chicago, Burlington & Quincy Railroad, and as part of a through line from Chicago, Illinois, to the Missouri river. This consolidated company appears to have been regarded in the courts of Iowa as an Illinois corporation.

(3) On the first of January, 1880, the said Chicago, Burlington & Quincy Railroad Company and the Burlington & Missouri River Railroad Company in Nebraska—the latter being a corporation of Nebraska—entered into articles of consolidation. These articles provide—

"That for the purpose of consolidating the stock, property, and franchises of the parties hereto, and of making of said corporations one joint-stock company, which, as the lines of railroad of the respective parties hereto connect at the boundary line between the states of Iowa and Nebraska, may be done under the laws of said states and the contracts aforesaid, it is agreed as follows; that is to say:

"ARTICLE 1.

"Such consolidation should be effected by a sale, assignment, and transfer, which is hereby made, of the railroad leaseholds, rights, and rights of action, contracts, moneys, stocks, franchises, and all other property of every nature and description whatsoever, of the second party to the first party, the Chicago, Burlington & Quincy Railroad Company."

In pursuance of this contract a formal conveyance of all the property of the Burlington & Missouri River Railroad Company in Nebraska was duly executed to the Chicago, Burlington & Quincy Railroad Company.

(4) A statute of Nebraska provides that—

"Every railroad company shall have power to intersect, join, and unite their railroads constructed or to be constructed in this state, or in adjoining states and territories, at such points on the boundary line of each or at such other point as may be mutually agreed upon by said companies. And such railroads are authorized to merge and consolidate the stock of the respective companies, making one joint-stock company of the railroads thus connected, upon such terms as may by them be mutually agreed upon, in accordance with the laws of the adjoining state or territory with whose road or roads connections are thus formed: provided, that the consent of three-fourths of all the stockholders in amount in any road whose stock is proposed to be consolidated shall be obtained."

It is admitted that the required assent of stockholders was obtained, and the question is whether these articles of consolidation, and the conveyance by the Nebraska corporation of all the property and franchises to the Chicago, Burlington & Quincy Railroad Company, makes the latter a domestic corporation. The same individuals may constitute separate and distinct corporations, either under the same or different names, in each of several states. It is also true that it is competent for the legislature of a state to prescribe the terms and conditions upon which foreign corporations shall have the right to engage in business in the state, and may require all such to become domestic corporations if it see fit to do so. *Stout* v. *Sioux City & Pac. R. Co.* 3 McCrary, 1; [S. C. 8 FED. REP. 794.] But it is clear that the legislature of Nebraska has not seen fit to require that a foreign corporation, which has constructed a railroad to the boundary line of the state, shall become a corporation of Nebraska before it shall be permitted to consolidate with a Nebraska corporation. The statute permitted the two corporations in question "to merge and consolidate the stock of the respective companies, making one joint-stock company of the railroads thus connected." It seems that the purpose was not to provide for a continuance of both corporations, and it is scarcely to be presumed that there was any purpose to require a dissolution of the Illinois corporation, as that would have been quite beyond the scope of its powers. How, then, was the consolidation of both companies into one to be accomplished? The an-

swer is to be found in the words of the statute: "upon such terms as may by them be mutually agreed upon, in accordance with the laws of the adjoining state or territory with whose road or roads connections are thus formed." The consolidation here was by a sale of the Nebraska road, with all its property and franchises, to the Illinois corporation, and, if there is to be but one consolidated company, the intention must have been to make the Illinois company that one. Was this unlawful? Clearly not, unless it violated some law either of Nebraska, Iowa, or Illinois. The statute of Iowa expressly authorizes consolidation by sale. I assume, as nothing appears to the contrary, that no provision of any law of Illinois has been violated. There is nothing in the above-quoted statute of Nebraska to prevent a consolidation by the sale of a domestic road to a foreign corporation which has built a line of railroad to the state boundary. On the contrary, the parties are expressly empowered to fix their own terms of consolidation, subject only to the condition that they shall not violate any law of the other state or states interested. The true rule upon this subject is that where the state does not assume, by its legislation, to create a corporation, or to require a foreign corporation to become domestic, but recognizes the existence of such foreign corporation, and its right to come into the state and transact business therein, such foreign corporation remains a corporation of the state under whose laws it was created, and, for purposes of the jurisdiction of the federal courts, a citizen of that state. *M., K. & T. Ry. Co.* v. *T. & St. L. Ry. Co.* 10 FED. REP. 497.

Within this rule I hold that the defendant is an Illinois corporation. The plea to the jurisdiction is accordingly overruled.